MICHAEL DILULLO ET AL. *v.* MICHAEL JOSEPH
(SC 16621)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued January 17—officially released March 26, 2002

*Stuart G. Blackburn,* with whom, on the brief, was *Margaret Ralphs,* for the appellant (plaintiff Public Service Mutual Insurance Company).

*Charles E. Hickey,* for the appellee (defendant).

*Opinion*

BORDEN, J. The dispositive issue in this appeal is whether, in the absence of a specific agreement covering the question, a fire insurer of leased premises has a right of subrogation against a tenant for negligently causing a fire. The plaintiff Public Service Mutual Insurance Company brought an action against the defendant, Michael Joseph, doing business as Random Remnants, based on its alleged subrogation rights arising out of a fire on certain premises leased by the defendant and owned by the plaintiff's insureds, who were the named plaintiff, Michael DiLullo, and the plaintiff Fioretta DiLullo.[1] The defendant moved for summary judgment on the subrogation count, which the trial court granted. The plaintiff appeals from that judgment.[2] We conclude that no right of subrogation exists and, accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff brought this subrogation claim against the defendant, alleging that the DiLullos were the owners of certain

[1] In the first count of the complaint, Michael DiLullo and Fioretta DiLullo, brought an action against the defendant in negligence. That count is not before us in this appeal. In the second count, which is presently before us, the plaintiff brought an action against the defendant as subrogee of the rights of the DiLullos. Accordingly, we refer to Public Service Mutual Insurance Company as the plaintiff throughout this opinion.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

premises located in Torrington, where the defendant operated a business known as Random Remnants. The plaintiff also alleged that on March, 24, 1998, a fire originated within the defendant's rented space that was caused by the defendant's negligence, resulting in damage to the insured premises and loss of rents to the DiLullos. The plaintiff alleged further that it had paid the DiLullos for some of their losses and was thereby subrogated to their rights to the extent of those payments.

The defendant moved for summary judgment on the basis that no such right of subrogation existed. Based upon the affidavits of the defendant and Michael DiLullo, as well as the deposition transcript of the defendant, filed in connection with the motion for summary judgment, the following facts may be taken as true. From December 1, 1995, to December 1, 1996, the defendant occupied the premises owned by the DiLullos under a written lease, and operated a business there. After the expiration of the lease, the defendant continued to rent the premises on a month-to-month basis. There was no agreement between the parties, either in the lease or otherwise, that the defendant would insure the premises for fire or other casualty, although Michael DiLullo requested the defendant to carry liability insurance on his business contents and, at the time of the entering of the lease, the defendant provided the DiLullos with evidence of such insurance. The defendant and the DiLullos never discussed the possibility that they would provide insurance coverage for each other, and there was no agreement that the DiLullos would relieve the defendant of liability arising from his own negligence. The defendant did not expect that any insurance that the DiLullos obtained would protect him, and he believed that his own insurance would cover his property losses and liability. Prior to the March 24, 1998 fire, the defendant had not formed an expectation

that the DiLullos' policy would provide him with coverage, and he acknowledged that his liability insurance would cover damage to the DiLullos' property.

The trial court granted the defendant's motion for summary judgment, ruling that, under the weight of authority, "[absent] an express agreement to the contrary, a tenant is an 'implied co-insured' under the landlord's insurance policy, and the insurance company may not, therefore, bring an action for subrogation against the tenant." Because there was no express agreement with the DiLullos obligating the defendant to insure the premises, the court concluded that the defendant and the DiLullos were coinsureds and that, therefore, no right of subrogation existed on behalf of the plaintiff, the DiLullos' insurer. Accordingly, the court rendered judgment for the defendant. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly rendered summary judgment for the defendant because: (1) contrary to the trial court's conclusion, a tenant is not an implied coinsured of a landlord in the absence of an express agreement to the contrary; (2) whether such a relationship exists between a landlord and tenant must be determined by examining the parties' intent, as gleaned on a case-by-case basis from their lease, if any, and their insurance policies; (3) the court improperly declined to consider the evidence presented to it regarding the parties' intent in determining whether they were coinsureds; and (4) the court should have inquired into the fact of the parties' intent regarding whether such a relationship existed between them. We agree with the trial court that, in the absence of an express agreement between the parties covering the question, there is no right of subrogation on the part of a landlord's fire insurer against a tenant of the landlord's

premises.[3] We reach this conclusion, however, by way of a different route from that of the trial court.

We first note that the precise issue we must resolve is: what should be the rule of law that governs in the typical default situation? That is, we recognize that tenants and landlords are always free to allocate their risks and coverages by specific agreements, in their leases or otherwise. The question posed by this appeal, however, is what the appropriate default rule of law should be where, as here, the parties have not made such an agreement.[4] Our strong public policy against economic waste, and the likely lack of expectations regarding a tenant's obligation to subrogate his landlord's insurer, lead us to conclude that, as a default rule, no such right of subrogation exists.

At the outset, we note that there is a split of authority on this question among other jurisdictions. The leading case for the proposition that there is no right of subrogation, in the absence of a specific agreement to the contrary, is *Sutton* v. *Jondahl*, 532 P.2d 478, 482 (Okla. App. 1975). What came to be known as the *Sutton* rule is based on the reasoning that the tenant is deemed to be a coinsured of the landlord because: (1) both parties have an insurable interest in the premises, the landlord as owner, and the tenant as possessor, of the fee; and (2) the tenant's rent presumably includes some calculation of the landlord's fire insurance premium. Id. The majority of courts, including the trial court in the present case, have generally adhered to the rule in *Sutton*,

---

[3] Because this conclusion implicitly rejects a case-by-case analysis of the specific terms of the parties' insurance policies, we need not consider the plaintiff's third and fourth claims.

[4] The trial court found that the parties did not specifically agree with each other, either in form or substance, regarding whether the landlords' insurer would have a right of subrogation against the tenant. We note, however, that such an agreement generally may be evidenced by the parties' lease, or by the tenant being named as an additional insured in the landlord's policy. See *Peterson* v. *Silva*, 428 Mass. 751, 754, 704 N.E.2d 1163 (1999).

either on its same or different reasoning. See, e.g., *Alaska Ins. Co.* v. *RCA Alaska Communications, Inc.*, 623 P.2d 1216, 1219–20 (Alaska 1981); *Lexington Ins. Co.* v. *Raboin*, 712 A.2d 1011, 1016 (Del. Super.), aff'd, 723 A.2d 397 (Del. 1998); *Continental Ins. Co.* v. *Kennerson*, 661 So. 2d 325, 330–31 (Fla. App. 1995); *Peterson* v. *Silva*, 428 Mass. 751, 754, 704 N.E.2d 1163 (1999);[5] *Jindra* v. *Clayton*, 247 Neb. 597, 604, 529 N.W.2d 523 (1995); *Safeco Ins. Co.* v. *Capri*, 101 Nev. 429, 431–32, 705 P.2d 659 (1985). In addition, Judge Keeton and Professor Widiss endorse the *Sutton* result, if not its rationale. "The possibility that a lessor's insurer may proceed against a lessee almost certainly is not within the expectations of most landlords and tenants unless they have been forewarned by expert counseling. When lease provisions are either silent or ambiguous in this regard—and especially when a lessor's insurance policy is also silent or ambiguous—courts should adopt a rule against allowing the lessor's insurer to proceed against the tenant." R. Keeton & A. Widiss, Insurance Law (1988) § 4.4 (b), pp. 340–41.

A minority of courts, however, has criticized the *Sutton* rule and has declined to follow it, adopting a case-by-case analysis instead. See, e.g., *56 Associates* v. *Frieband*, 89 F. Sup. 2d 189, 192–94 (D.R.I. 2000); *Page* v. *Scott*, 263 Ark. 684, 687, 567 S.W.2d 101 (1978); *Bannock Building Co.* v. *Sahlberg*, 126 Idaho 545, 548, 887 P.2d 1052 (1994); *Neubauer* v. *Hostetter*, 485 N.W.2d 87, 89–90 (Iowa 1992); *Britton* v. *Wooten*, 817 S.W.2d 443, 447 (Ky. 1991); *Osborne* v. *Chapman*, 574 N.W.2d 64,

---

[5] The Massachusetts Supreme Judicial Court recently decided *Seaco Ins. Co.* v. *Barbosa*, 435 Mass. 772, 779, 761 N.E.2d 946 (2002), which limited the application of *Peterson* to residential tenancies and rejected the *Sutton* rule in the context of commercial tenancies. We decline to follow *Seaco Ins. Co.*, however, because in our opinion, the considerations of economic waste, upon which we base our decision today, are likely to be compounded in a commercial setting involving a large number of tenancies.

67 (Minn. 1998). A leading treatise on insurance law also has found fault with the *Sutton* rationale, noting that "the fact both parties had insurable interests [in the premises] does not make them co-insureds. The insurer has a right to choose whom it will insure and it did not choose to insure the lessees, and under this holding the lessee could have sued the insurer for loss due to damage to the realty, e.g. loss of use if policy provides such coverage." 6A J. Appleman & J. Appleman, Insurance Law and Practice (Cum. Sup. 2001) § 4055, pp. 131–32 n.86.10. Appleman has acknowledged, however, that the "[c]ases following *Sutton,* have at least impliedly restricted the co-insurance relationship to one limited solely to the purpose of prohibiting subrogation." Id.

We agree with these criticisms of the *Sutton* rationale, as a matter of the general principles of insurance and contract law. Thus, we agree that, under traditional rules of insurance law, a tenant is not a coinsured on his landlord's fire insurance policy simply because he has an insurable interest in the premises and pays rent. We also agree with the plaintiff that, as a matter of the traditional rules of contract law, whether subrogation would or would not apply ordinarily would depend, in large part, on a case-by-case analysis of the language of the insurance policies and leases involved. In accordance with the weight of authority, however, we conclude that the *Sutton* result is sound as a matter of subrogation law and policy, and that those considerations outweigh the criticisms and the usual rules of insurance and contract law.

Our decision is founded, in large part, upon the principle that subrogation, as an equitable doctrine, invokes matters of policy and fairness. See *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.,* 123 Conn. 232, 238, 193 A. 769 (1937) ("[s]ubrogation is a doctrine which equity borrowed from the civil law and administers so as to

secure justice without regard to form or mere technicality" [internal quotation marks omitted]). One such policy implicated by the issue presently before us is that disfavoring economic waste. See *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 154, 763 A.2d 1011 (2001) (policy against economic waste long recognized in our jurisprudence). This strong public policy convinces us that it would be inappropriate to create a default rule that allocates to the tenant the responsibility of maintaining sufficient insurance to cover a claim for subrogation by his landlord's insurer. Such a rule would create a strong incentive for every tenant to carry liability insurance in an amount necessary to compensate for the value, or perhaps even the replacement cost, of the entire building, irrespective of the portion of the building occupied by the tenant. That is precisely the same value or replacement cost insured by the landlord under his fire insurance policy. Thus, although the two forms of insurance would be different, the economic interest insured would be the same. This duplication of insurance would, in our view, constitute economic waste and, in a multiunit building, the waste would be compounded by the number of tenants. See *Peterson* v. *Silva*, supra, 428 Mass. 754 ("[i]t surely is not in the public interest to require all the tenants to insure the building which they share, thus causing the building to be fully insured by each tenancy"). We think that our law would be better served by having the default rule of law embody this policy against economic waste, and by leaving it to the specific agreement of the parties if they wish a different rule to apply to their, or their insurers', relationship.

Furthermore, we agree with Judge Keeton and Professor Widiss that, in most instances, neither landlords nor tenants ordinarily expect that the landlord's insurer would be proceeding against the tenant, unless expert counseling to that effect had forewarned them. R. Kee-

ton & A. Widiss, supra, § 4.4 (b), pp. 340–41. Thus, barring subrogation in such a case comports with the equities of most situations.

The judgment is affirmed.

In this opinion the other justices concurred.