[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AS TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Motions 124, 126, 128) 
The impetus for this case was a fire that destroyed a house owned by John Kucej and insured by the plaintiff Nationwide Mutual Insurance Company (Nationwide). The property, located at 1317 Fairfield Beach Road, Fairfield, Connecticut, was leased by Kucej to the defendants Michael Maurillo, Michael Keegan, Marc Spellane, and Matthew Callaghan. On December 20, 1997, during the defendants' tenancy, a fire occurred at 1317 Fairfield Road which was allegedly caused by an open can of gas located in the basement. Nationwide paid Kucej for the damages caused by the fire, and now seeks reimbursement from the defendants through subrogation.
On August 9, 2000, the plaintiff Nationwide filed a twelve-count complaint against the defendants.[1] Nationwide's complaint alleges that each defendant individually was negligent, breached their lease, and is liable under the doctrine of res ipsa loquitur. None of the defendants were named insureds or signatories to the fire insurance policy provided by Nationwide.
Keegan filed a motion for summary judgment on October 15, 2002 with an attached memorandum of law. Maurillo filed a separate motion for summary judgment on October 31, 2002. In support of his motion, Maurillo submitted a memorandum of law and a copy of the rental agreement entered into between the defendants and Kucej. On November 7, 2002, Spellane filed a motion for summary judgment and in support incorporated by reference Maurillo's memorandum of law. On December 10, 2002, Nationwide filed an objection to the defendants' motions for summary judgment. In support of its objection, Nationwide submitted a copy of the rental agreement, as well as a certified copy of the fire insurance policy issued to Kucej covering the property located at 1317 Fairfield Beach Road. All parties rely upon the same rental agreement to support their positions. CT Page 3451
"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Gaynor v.Payne, 261 Conn. 585, 590, 840 A.2d 170 (2002). "A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Internal quotation marks omitted.) Rosenfield v. Rogin,Nassau, Caplan, Lassman Hirtle, LLC, 69 Conn. App. 151, 157,795 A.2d 572 (2002).
This case requires the application of the rule set forth in DiLullo v.Joseph, 259 Conn. 847, 792 A.2d 819 (2002), which bars a subrogation action by a landlord's fire insurer against tenants, absent an express agreement to the contrary. The question on these motions for summary judgment is whether Nationwide, as the landlord's fire insurer, has such a right of subrogation against the defendant tenants. The defendants argue that there was no express agreement between themselves and the landlord covering the issue of subrogation rights of the landlord's fire insurer, and that in the absence of an agreement, no such right exists. In opposition, Nationwide argues that a question of material fact exists with respect to subrogation rights. Specifically, Nationwide argues that there are terms contained in the lease that satisfy the requirement of an express agreement on the issue of subrogation rights. Nationwide also makes other arguments in opposition to the defendants' motions for summary judgment based on, inter alia, equal protection, due process, and General Statutes § 38a-307.
"In its simplest form, subrogation allows a party who has paid a debt to `step into the shoes' of another (usually the debtee) to assume his or her legal rights against a third party to prevent that party's unjust enrichment . . . In that way, an insurance company, for example, can be substituted for the insured in an action against a third-party tortfeasor. The insured, having been paid by the insurer, in essence, transfers his rights against the tortfeasor to the insurer. The insurer, thus, can attempt to collect from the party that caused the loss to the extent expended by the insurer in satisfying the claim." (Citation CT Page 3452 omitted.) Wasko v. Manella, 74 Conn. App. 32, 35-36, 811 A.2d 727
(2002), cert. granted, 262 Conn. 942 (2003).
DiLullo v. Joseph, supra, 259 Conn. 847, is the sole appellate authority in Connecticut dealing with the issue of "whether, in the absence of a specific agreement covering the question, a fire insurer of leased premises has a right of subrogation against a tenant . . ." Id., 848. In that case, the plaintiff insurance company brought a subrogation claim against the defendant tenant, claiming that the defendant's negligence caused damage to the rented premises. As a result of such damage, the plaintiff was required to pay its insured, the landlord, for his losses.
The court in DiLullo recognized that "tenants and landlords are always free to allocate their risks and coverages by specific agreements, in their leases or otherwise." Id., 851. The court held, however, that in the absence of an express agreement to the contrary, "there is no right of subrogation on the part of a landlord's fire insurer against a tenant of the landlord's premises. Id., 850-51. An express agreement is required by DiLullo because, as pointed out by the court, "neither landlords nor tenants ordinarily expect that the landlord's insurer would be proceeding against the tenant, unless expert counseling to that effect had forewarned them." Id., 854.
Further, such agreement must be specific as to the landlord's insurer having a right of subrogation against the tenant. "The trial court found that the parties did not specifically agree with each other . . . regarding whether the landlord's insurer would have a right of subrogation against the tenant. We note, however, that such an agreement generally may be evidenced by the parties' lease, or by the tenant being named as an additional insured in the landlord's policy." DiLullo v.Joseph, supra, 259 Conn. 851 n. 4.
The DiLullo decision was based on a "strong public policy against economic waste, and the likely lack of expectations regarding a tenant's obligation to subrogate his landlord's insurer . . ." Id., 851. As the Supreme Court unanimously stated: `This strong public policy convinces us that it would be inappropriate to create a default rule that allocates to the tenant the responsibility of maintaining sufficient insurance to cover a claim for subrogation by his landlord's insurer. Such a rule would create a strong incentive for every tenant to carry liability insurance in an amount necessary to compensate for the value, or perhaps even the replacement cost, of the entire building, irrespective of the portion of the building occupied by the tenant. That is precisely the same value or replacement cost insured by the landlord under his fire CT Page 3453 insurance policy. Thus, although the two forms of insurance would be different, the economic interest insured would be the same. This duplication of insurance would, in our view, constitute economic waste and, in a multiunit building, the waste would be compounded by the number of tenants . . . We think that our law would be better served by having the default rule of law embody this policy against economic waste, and by leaving it to the specific agreement of the parties if they wish a different rule to apply to their, or their insurers', relationship." (Citation omitted.) Id., 854.
Nationwide's position with regard to the rental agreement in this case is that several disparate provisions may be read together to create a specific agreement allowing it to seek subrogation from the tenant defendants. Quite simply, there is no reference anywhere in the lease to any subrogation rights of Nationwide nor may any combination of its provisions be read to create an express agreement by defendants to allow subrogation by the landlord's fire insurer against them.
Nationwide points to lease paragraph 20 requiring defendants to "comply with all laws . . . of governmental authorities . . . comply with any insurance companies which have issued or are about to issue insurance policies covering [the premises] . . . not keep anything on the [premises] which is dangerous, flammable, explosive or which might increase the danger of fire or other hazard . . ." While this paragraph does reference a general requirement to comply with governmental laws and insurance companies and a specific one to not keep hazardous materials, it does not constitute the type of express agreement to allow subrogation required to overcome the default rule established in DiLullo.
Nationwide also points to the unnumbered paragraphs which state that: `Tenants are held liable for any reasonable damages and costs incurred by the landlord" and "[t]enants are responsible for their own fire and liability insurance." These also fall short of a specific agreement to allow the landlord's fire insurer to sue the tenant defendants. The mere fact that a tenant is required to obtain his own insurance or be responsible to the landlord for his own actions is insufficient to create such an agreement. DiLullo is instructive in this regard. The tenant inDiLullo insured his own contents, at the insistence of the landlord, which insurance even extended to damage to the landlord's property. Similarly in DiLullo, there was no lease provision relieving the tenant of liability for his actions to the landlord. Because there is no express agreement stating that the tenants are liable to the landlord's fire insurer in the event that the tenants cause fire damage to the rented property, Nationwide has no right of subrogation against them. CT Page 3454
Nationwide's additional arguments are without merit. Nationwide argues that it will be deprived of access to the courts, in deprivation of its federal and state due process and equal protection rights, if it has no right to subrogation. But these claims ignore the state action doctrine.
"[S]tate action . . . [is] an essential requirement for invocation of the due process clause of both our federal and state constitutions."Savage v. Aronson, 214 Conn. 256, 284, 571 A.2d 696 (1990). Also, with respect to the equal protection clause, it is "designed as a safeguard against acts of the state . . ." (Internal quotation marks omitted.)Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691, 714,802 A.2d 731 (2002). See also Lockwood v. Killian, 172 Conn. 496, 501,375 A.2d 998 (1977). No actionable state activity is involved here.Nationwide Insurance Co. v. Comito, Superior Court, judicial district of New Haven at Meriden, Docket No. CV 99 0270188 (June 6, 2002, Skolnick, J.) (32 Conn.L.Rptr. 290).
As to the plaintiff's claim of a violation of Article 1, § 10 of the state constitution, as the court stated in Nationwide Insurance Co.v. Comito, supra, 32 Conn.L.Rptr. 290:
Additionally, the plaintiff's claim under Article 1, § 10, of the Connecticut constitution is also without merit. "[A]rticle first, § 10, prohibits the legislature from abolishing or significantly limiting common law and certain statutory rights that were redressable in court as of 1818, when the constitution was first adopted, and which were incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized injury . . . The legislature is precluded, therefore, from abolishing or substantially modifying any such right unless it enacts a reasonable alternative to the enforcement of that right . . . Article first, § 10, however, does not itself create new substantive rights but, instead, protects access to our state's courts." (Citations omitted; internal quotation marks omitted.) Binette v. Sabo, 244 Conn. 23, 30-31, 710 A.2d 688 (1998). The plaintiff fails to demonstrate the applicability of this constitutional provision to the facts of the present case. No action of the legislature abolishing any right arguably existing in the common law before 1818 is involved here.
Id., 292.
Finally, Nationwide argues that its right of subrogation is protected by General Statutes § 38a-307. In light of the DiLullo decision, this statute is inapplicable here. Nationwide Insurance Co. v. Comito, supra,32 Conn.L.Rptr. 290. CT Page 3455
There being no express agreement between Kucej and the defendants allowing Nationwide a right of subrogation against them, they are entitled to judgment as a matter of law. The motions for summary judgment are granted.
 James Graham Superior Court Judge