**In re Domenic DeLUCIA, Gail DeLucia, Debtors.**

**No. 95–31612.**

United States Bankruptcy Court, D. Connecticut.

April 24, 2001.

Robert W. Lynch, Lynch, Traub, Keefe & Errante, P.C., New Haven, CT, for Debtors.

Gary M. Becker, Day, Berry & Howard, Hartford, CT, for Objector.

## MEMORANDUM OF DECISION ON OBJECTION TO CLAIMS OF EXEMPTION

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

This exemption objection matter raises interesting legal questions implicated by the competing claims of a debtor/injured party and her employer/self-funded medical provider in and to a personal injury action against a third party who is responsible for the debtor's injuries. For the reasons which follow, the Court resolves the matter in favor of the debtor's rights in the subject action.

### II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine the matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(B), (O).

### III. FACTUAL AND PROCEDURAL BACKGROUND

The following factual and procedural background is derived from (i) this Court's judicial noticing of the official files and records of the instant bankruptcy case, and (ii) a Stipulation of Facts (Doc. I.D. No. 34) filed by the parties incident to the hearing of the instant matter.

This bankruptcy case was commenced on August 29, 1995, through the filing of the Debtors' joint voluntary petition. Prior to the commencement of this case, Debtor Gail DeLucia (hereafter, "Gail") was severely injured in an automobile accident (hereafter, the "Accident") allegedly caused by the negligence of one Jan Gardocki (hereafter, "Gardocki"). At the time of the Accident, Gail was an employee of Manpower International, Inc. (hereafter, "Manpower"), which is the administrator of the Manpower International Inc. Self–Funded Group Benefits Plan (hereafter,

the "Plan")—a medical benefits plan which is governed by the Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. § 1001 *et seq.*) (hereafter, "ERISA").[1] The Plan has paid on Gail's behalf over $117,000.00 in medical expenses occasioned by the Accident.

On or about October 13, 1994, Gail instituted a lawsuit against Gardocki in the Connecicut Superior Court for the Judicial District of New Haven at New Haven, entitled *Gail DeLucia v. Jan Gardocki,* and bearing Docket No. CV94–366951 (hereafter, the "Lawsuit"). If tried, the Lawsuit might result in a judgment against Gardocki in an amount as high as $500,000.00. Gardocki has no resources, other than insurance coverage, from which to satisfy any judgment Gail might obtain in the Lawsuit. Gardocki—through his insurance company—has offered to settle the Lawsuit for $50,000.00, which is the maximum payment possible under his insurance policy.

At the time she commenced this bankruptcy case, Gail filed with the Court a Schedule B—"Personal Property"—which disclosed, *inter alia,* a contingent and unliquidated claim described as a "personal injury lawsuit, New Haven Superior Court # 366951" (hereafter referred to as the "Injury Claim"), valued by her at $50,000.00. This is the same claim asserted in the Lawsuit. On Amended Schedule C—"Property Claimed as Exempt"—Gail sought to exempt the Injury Claim, *inter alia.* She allocated her exemption claim as follows: (i) $7,520.00 pursuant to 11 U.S.C. § 522(d)(5); (ii) $15,000.00 pursuant to 11 U.S.C. § 522(d)(11)(D); and (iii)

$27,480.00, "or, in the event the recovery exceeds $50,000.00, all of the award which is in compensation of loss of future earnings", pursuant to 11 U.S.C. § 522(d)(11)(E) (hereafter, collectively, the "Exemption Claim").

Two distinct objections to the Exemption Claim were filed by parties in interest. The first—filed on November 2, 1995, by the Debtors' Chapter 7 Trustee, Michael J. Daly (hereafter, the "Trustee"), alleged that the Trustee had insufficient information from which to determine if the value of the Injury Claim was within the limits of 11 U.S.C. § 522(d). The Trustee requested that the Clerk not set that Objection for hearing, representing that he would reclaim or withdraw it upon settlement of the Injury Claim.[2]

The "second" exemption objection (Doc. I.D. No. 13) was filed by Manpower on November 13, 1995, and is the subject of this Memorandum of Decision (hereafter, the "Manpower Objection"). The Manpower Objection challenges the Exemption Claim on the basis of Manpower's asserted superior right in the Injury Claim based upon its payment of Gail's medical expenses.

## IV. DISCUSSION

■ A bankruptcy debtor may only claim exemptions "from" property of her bankruptcy estate. 11 U.S.C. § 522(b) (1995). Thus, non-estate property is ineligible for exemption. The Manpower Objection asserts that the Injury Claim was not property of Gail's bankruptcy estate because Manpower had a superior interest

1. In view of the fact that the Plan is self-funded, and governed by ERISA, all material issues of law in this matter shall be determined with reference to federal statutory and common law. *See FMC Corporation v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

2. An apparently duplicative Objection was filed by the Trustee on November 6, 1995. It appears to conform precisely to the Trustee's first objection, and was accompanied by a similar scheduling request.

therein at the time she filed her bankruptcy petition. Manpower claims its superior interest on the strength of three independent legal doctrines: subrogation, equitable lien, and constructive trust.

## A. Subrogation.

■ "Subrogation is the right one party has against a third party following payment, in whole or in part, of a legal obligation that ought to have been met by the third party." *Allstate Ins. Co. v. Mazzola,* 175 F.3d 255, 258 (2d Cir.1999) (*quoting* 2 Allan D. Windt, *Insurance Claims and Disputes* § 10.05 (1995)). The posture and context of the present dispute—a health benefits "insurer"[3] seeking to be subrogated to the rights of its "insured" against a tortfeasor who caused the injuries necessitating the medical care paid for by the "insurer"—is a classic setting for the application of principles of subrogation.[4]

■ Manpower correctly observes that an asset in which a non-debtor entity has a pre-petition subrogation interest is not property of the bankruptcy estate of the debtor to whom the non-debtor is subrogated. *See, e.g., Ginley v. Blue Cross and Blue Shield of Ohio (In re DuBose),* 174 B.R. 260, 262 (Bankr.N.D.Ohio 1994) (Ohio subrogation law); *cf. Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) (Bankruptcy Act case; recognizing construction surety subrogation rights as superior to bankruptcy trustee). Thus, if Manpower can establish the basis for a subrogation interest in the entirety of the Injury Claim, Gail's Exemption Claim must be denied. Manpower claims to have acquired its subrogation right under both contract and equitable principles.

### 1. Contractual Subrogation.

■ A medical benefit plan may acquire subrogation rights through specific agreement with its beneficiary. In this case Manpower directs the Court's attention to two possible sources of contractual subrogation—an Accident Information Form and the Plan Document.

#### a. Accident Information Form.

■ On or about June 16, 1994, Gail executed a Plan document entitled, "Accident Information and Subrogation Form" (hereafter, the "Form"), which sought, *inter alia,* information about the Accident. Side 2 of the Form states as follows: "This Plan is not liable for expenses reimbursea-ble [sic] as another party's liability. This Plan will process this claim, however, pending settlement with the other party, upon receipt of the following information...." Later in the Form, above Gail's signature, appears the following language:

> I promise to promptly *reimburse the Plan when I recover* by settlement, judgement, insurance or otherwise from the party causing or contributing to the accident.

> I agree to execute instruments and papers, furnish information and assistance, and take other necessary and related actions the Plan may require to facilitate its *right of reimbursement.*

---

**3.** The Court recognizes that a self-funded medical benefits plan is in many contexts *not* an "insurer". However, this Memorandum of Decision will occasionally adopt insurance terminology for purposes of clarity.

**4.** Although some States have statutorily restricted or eliminated an insurer's right of subrogation, *see, e.g.,* Connecticut General Statutes § 52–225c (1995), as stated in footnote 1, this matter is in all material respects governed by federal law. As applied to self-funded medical benefit plans, such as that in issue here, ERISA preempts state law. *See FMC, supra.*

I represent and warrant that no release or discharge has been or will be given with respect to rights of recovery, and that I have done and will do nothing to prejudice such rights.

(emphasis supplied).

In substance, the Form does not even purport to grant Manpower a subrogation right. Rather it grants, at most, a right of reimbursement from any recovery received by Gail in her own right. A right of reimbursement does not preclude the Injury Claim, or even its proceeds, from being property of Gail's bankruptcy estate. Accordingly, this Court will not recognize a subrogation right in Manpower based upon any agreement evidenced by the Form.

*b. The Plan Document.*

■ The "Self–Funded Benefits Plan Document for Manpower Inc. Corporate Employees", effective January 1, 1989 (heretofore and hereafter, the "Plan Document"), provides at ¶ 7.10, titled "Subrogation"—

In the event that any payments are made under the Plan to any person, the *Plan shall be subrogated to all rights of recovery of such person against any and all persons or organizations arising out of the condition, illness or injury with respect to which such payments were made.* Such right of recovery shall be enforceable by the Plan regardless of whether any such recovery is characterized as reimbursement for expenses paid by the Plan or in some other manner, as long as the recovery is related in any way to the condition, illness or injury with respect to which payments are made under the Plan, or to the events which gave rise to such condition, illness or injury. Any person prior to receiving payments under this Plan shall execute and deliver instruments and papers and do whatsoever else is necessary to se-

cure the Plan's rights of recovery described above and shall do nothing whatsoever to prejudice such rights.

(emphasis supplied).

ERISA requires that plan documents be "written in a manner calculated to be understood by the average plan participant, and ... be sufficiently accurate and comprehensive to reasonably apprise ... participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a) (1994). While it is a close question, the Court concludes that ¶ 7.10 of the Plan Document, particularly the emphasized clause thereof, was not written in a manner *calculated* to be understood by an average Plan participant. The emphasized clause assumes prior familiarity with the concept of subrogation. It also is rather opaque with respect to the subrogated rights' target—"persons or organizations arising out of the condition, illness or injury ...." The Court suspects that the drafter's intent could have been clarified with the insertion of a comma between "organizations" and "arising". However, under general contract principles an ambiguous clause is construed against its drafter. That presumption is only heightened by ERISA's mandate of calculated reasonable clarity.

■ Even if this Court were to find that ¶ 7.10 was sufficiently clear to grant a subrogation right in the first instance, the Injury Claim would still be exemptible property of Gail's bankruptcy estate because Manpower's putative subrogation rights would be contingent upon Gail being made "whole" from the injuries she received in the Accident. This concept, termed by some courts as the "Make–Whole Rule", is applied by this Court as a default common law rule, as it has been by several other courts. *See, e.g., Copeland Oaks v. Haupt,* 209 F.3d 811 (6th Cir. 2000); *Cagle v. Bruner,* 112 F.3d 1510

(11th Cir.1997); *Barnes v. Independent Auto. Dealers Ass' of Calif., Health and Welfare Benefit Plan*, 64 F.3d 1389 (9th Cir.1995). The Make–Whole Rule is based upon the longstanding general equitable principle of insurance law that, "absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, ... made whole." *Barnes*, 64 F.3d at 1394. This rule has been regularly utilized by courts as a "gap-filler" when ERISA-governed benefit plans are ambiguous or silent as to the priority of rights as between a medical benefit plan and its injured beneficiary. The Rule applies unless a plan explicitly overrides it in writing.

The language of ¶ 7.10 of the Plan does not state that the Make–Whole Rule will be overriden; in fact it is completely silent as to the priority of the Plan's putative subrogation right. Accordingly, this Court will not recognize a subrogation right in Manpower based upon ¶ 7.10 of the Plan since the Court concludes upon the stipulated facts that the $50,000.00 proceeds of the Injury Claim will not make Gail whole from the Accident.

### 2. *Equitable Subrogation.*

■ Manpower also asserts an independent subrogation right arising under equitable principles, even in the absence of an agreement with Gail. Indeed, where appropriate, equity supplies a subrogation right which is not dependent upon statutory or contractual license. *See Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 105–06 (2d Cir.1992). In this context, equity's purpose is "to afford relief to those required as insurers, to pay a legal obligation that ought, in equity and good conscience, to have been met by another." *Id.*

Nonetheless, these principles are unavailing for Manpower here, since the Make–Whole Rule, discussed *supra*, applies with equal, if not greater, force to equitable subrogation than to contractual subrogation. Hence, the Plan has no enforceable subrogation rights under general principles of equity.

### B. Equitable Lien.

■ Although Manpower has asserted, in the alternative, an equitable lien interest in the Injury Claim, it is apparent that as an exemption objection theory, such an argument must fail. A lien interest presupposes an ownership interest by a debtor; thus it does not impugn a property's designation, in the first instance, as property of a bankruptcy estate. A liened property may be exempted from a bankruptcy estate, although remaining liable for the lien. *See* 11 U.S.C. § 522(c)(2) (1995).

Yet, even if lien theory were sufficient to preclude exemption, the theory would still not aid Manpower in this case. The equitable principles underlying the Make–Whole Rule, discussed *supra*, will apply with equal force in the determination of an equitable lien.

### C. Constructive Trust.

■ Manpower also argues that constructive trust principles exclude the Injury Claim and its proceeds from Gail's bankruptcy estate. This alternative tact possesses a facially solid legal basis in this Circuit. *See Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88 (2d Cir. 1989) (excluding from a bankruptcy estate property held by the debtor in constructive trust).[5] Nevertheless, Manpower's theory

---

**5.** In at least one other Circuit, federal courts decline to give retroactive effect to the imposition of a constructive trust, at least when assessing the asset composition of a bankrupt-

suffers from conceptual and factual inadequacies.

Owing to its remedial nature, constructive trusts are traditionally imposed only upon the occurrence of some misconduct. Although Gail has claimed exclusive right to the Injury Claim, the record does not reveal that she has taken any action prejudicial to Manpower's alleged interest therein. Granted, the federal common law of constructive trusts arguably extends beyond the traditional state law concept of misconduct—embracing situations where one has simply defaulted in a duty to act as a conduit of funds. *See In re Columbia Gas Systems Inc.*, 997 F.2d 1039 (3d Cir. 1993). Yet, even if Gail is found to have had a duty to convey the Lawsuit and/or its proceeds to Manpower, a constructive trust claim is not ripe since she has never had possession of any property which might, in theory, be the rightful property of Manpower. There simply is no misconduct, unlawful detention, or unjust enrichment which would support the imposition of a constructive trust. If Manpower's subrogation or other equitable claim were valid, it would prevail by operation of law without Gail's assistance.

More practically however, as this Court has concluded, *supra*, under the Make–Whole Rule Gail has no duty to facilitate Manpower's acquisition of the Injury Claim or its proceeds until all of her damages proximately caused by the Accident are fully compensated.

cy estate relative to the constructive trust claim of a third party. *See, e.g., XL/Datacomp v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir.1994). That Court's view springs from its belief that under the common law a constructive trust is not really a trust at all, but rather a *remedy*, which can only have prospective effect from the time a court issues it.

## V. CONCLUSION

For the foregoing reasons, the Objection of Manpower International, Inc. to the exemption claims of the Debtor Gail DeLucia in the subject personal injury claim shall be **OVERRULED** and **DENIED**.[6] A separate order shall enter this day.

6. Nothing in this Memorandum of Decision should be construed as a determination of the validity and/or extent of Gail DeLucia's exemption claims vis-a-vis the allowances and limitations of 11 U.S.C. § 522(d).