10-0797-cv
Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency Inc.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: December 21, 2010    Decided: April 29, 2011)

Docket No. 10-0797-cv

- - - - - - - - - - - - - - - - - - - - -x

FIREMAN'S FUND INSURANCE COMPANY,

       Plaintiff-Counter-Defendant-
       Appellee,

       -v.-                       10-0797-cv

TD BANKNORTH INSURANCE AGENCY
INCORPORATED, f/k/a MORSE, PAYSON &
NOYES INSURANCE,

       Defendant-Counter-Claimant-
       Appellant.

- - - - - - - - - - - - - - - - - - - - -x

     Before:  DENNIS JACOBS, Chief Judge,
              GUIDO CALABRESI,
              ROBERT D. SACK, Circuit Judges.

A policyholder appeals from a declaratory judgment entered in the United States District Court for the District of Connecticut (Droney, J.), awarding to its insurer all funds held in escrow as proceeds from settlement of the policyholder's claims against third parties. The

policyholder, TD Banknorth Insurance Agency, Inc., challenges the allocation of the escrowed funds on the ground that Connecticut's common law "make whole" doctrine entitles it to recover its deductible before its insurer, Fireman's Fund Insurance Company, can collect as subrogee.

The district court concluded that the subrogation clause in the contract between the two parties abrogated Connecticut's make whole doctrine. We disagree. The contract at issue did not abrogate Connecticut's make whole doctrine; however, this conclusion raises the more basic issue of whether Connecticut's make whole doctrine applies to insurance deductibles at all. Because this question is undecided under Connecticut law, we certify it to the Supreme Court of Connecticut and stay resolution of this case in the interval.

FOR APPELLANT:     Robert M. Sullivan
                   Frederick M. Klein
                   The Sullivan Law Group, LLP
                   New York, NY

FOR APPELLEE:      Christopher B. Weldon
                   Darren P. Renner
                   Debra M. Krebs
                   Keidel, Weldon & Cunningham, LLP
                   White Plains, NY

DENNIS JACOBS, Chief Judge:

A policyholder appeals from a declaratory judgment entered in the United States District Court for the District of Connecticut (Droney, J.), awarding to its insurer all funds held in escrow as proceeds from settlement of the policyholder's claims against third parties. The policyholder, TD Banknorth Insurance Agency, Inc. ("TD Banknorth"), challenges the allocation of the escrowed funds on the ground that Connecticut's common law "make whole" doctrine entitles it to recover its deductible before its insurer, Fireman's Fund Insurance Company ("Fireman's Fund"), can collect as subrogee.

The district court concluded that the subrogation clause in the contract between TD Banknorth and Fireman's Fund abrogated Connecticut's make whole doctrine. We disagree. The contract at issue did not abrogate Connecticut's make whole doctrine; however, this conclusion raises the more basic issue of whether Connecticut's make whole doctrine applies to insurance deductibles at all. Because this question is undecided under Connecticut law, we certify it to the Supreme Court of Connecticut and stay resolution of this case in the interval.

**BACKGROUND**

In 2005 Haynes Construction Company ("Haynes") began work on a housing development and retained TD Banknorth as its agent to arrange insurance. TD Banknorth procured a Builder's Risk insurance policy from Peerless Insurance Company ("Peerless") and an Inland Marine insurance policy from Hartford Insurance Company ("Hartford"). In February 2006, a fire destroyed a house being built on Lot 14 of the Haynes development. Peerless denied coverage of the loss because Lot 14 was not listed in its Builder's Risk policy-- an error of omission by TD Banknorth. Haynes thereupon claimed against TD Banknorth for its negligent omission of Lot 14.

To protect against the risk of such negligence, TD Banknorth had purchased Errors & Omissions coverage with Fireman's Fund ("E&O Contract"). Fireman's Fund undertook to pay on TD Banknorth's behalf any sums TD Banknorth became "legally obligated to pay as damages because of a negligent act, error or omission in the performance of [TD Banknorth's] professional services." The E&O Contract had a deductible of $150,000 per claim. TD Banknorth gave timely notice of the loss to Fireman's Fund.

4

In July 2006, TD Banknorth and Fireman's Fund settled with Haynes for $354,000.[1]  Of that, TD Banknorth contributed $150,000 (its single claim deductible) and Fireman's Fund contributed the $204,000 remainder.  In the settlement, Haynes assigned its rights against Peerless and Hartford to Fireman's Fund and TD Banknorth collectively.

TD Banknorth--and Fireman's Fund as subrogee--then proceeded against Peerless and Hartford for the $354,000.  In the ensuing settlement, Peerless paid $88,000 and Hartford paid $120,100 in exchange for complete releases.  TD Banknorth and Fireman's Fund "reserve[d] all rights that they may have against each other relating to the allocation of the [settlement funds] held in escrow."  The $208,000 was deposited in an escrow account.

In March 2008, Fireman's Fund commenced this action against TD Banknorth in the District of Connecticut, seeking a declaratory judgment that it was entitled to all of the escrow funds.  Fireman's Fund claimed $10,000 in defense costs (incurred on TD Banknorth's behalf) in addition to the $204,000 it had paid Haynes: a total of $214,000.  TD Banknorth counterclaimed for a declaratory judgment that,

_____

[1] All dollar amounts in this opinion (other than the deductible) are rounded to the nearest thousand.

5

under Connecticut's make whole doctrine, it was entitled to recover its $150,000 deductible from the escrow funds.

Both parties moved for summary judgment. The district court found that the subrogation clause in the E&O Contract abrogated Connecticut's make whole doctrine, and accordingly granted summary judgment in favor of Fireman's Fund. Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc., No. 3:08-cv-364, 2010 WL 420041, at *4 (D. Conn. Feb. 1, 2010). TD Banknorth appeals.[2]

**DISCUSSION**

TD Banknorth is a Maine corporation, and Fireman's Fund is a California corporation. The amount in dispute is greater than $75,000. Therefore, we have subject-matter jurisdiction over their dispute under 28 U.S.C. § 1332 (diversity jurisdiction).

"We review the district court's ruling on cross-motions for summary judgment de novo, in each case construing the evidence in the light most favorable to the non-moving

---

[2] On March 31, 2010, TD Banknorth moved this Court to certify several questions to the Connecticut Supreme Court, including a question similar to the one we certify here. We denied this motion on May 18, 2010, but we did so "without prejudice to a renewal of the motion before the panel that hears the merits of the appeal."

party." Nat'l Res. Def. Council, Inc. v. U.S. Dep't of Agric., 613 F.3d 76, 83 (2d Cir. 2010). We review de novo a district court's interpretation of the terms of a contract. ReliaStar Life Ins. Co. of N.Y. v. Home Depot U.S.A., Inc., 570 F.3d 513, 517 (2d Cir. 2009).

This appeal turns on a single question of law: Is TD Banknorth entitled to recoup the $150,000 deductible by virtue of Connecticut's make whole doctrine?

**I.**

The district court concluded that the make whole doctrine does not apply to the $150,000 deductible because the terms of the E&O Contract abrogated the doctrine. We disagree.

In Connecticut, insurance companies have an equitable right of subrogation at common law even in the absence of express contract terms to that effect. Wasko v. Manella, 849 A.2d 777, 781 (Conn. 2004) ("[T]he right of legal or equitable subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect." (brackets and internal

quotation marks omitted) (quoting <u>Westchester Fire Ins. Co.</u> <u>v. Allstate Ins. Co.</u>, 672 A.2d 939, 944 (Conn. 1996))). This equitable right of subrogation is subject to the "make whole doctrine," which provides that "the insurer may enforce its subrogation rights only after the insured has been fully compensated for all of its loss." <u>United States</u> <u>v. Lara</u>, No. 3:08-cr-00169, 2009 WL 3754069, at *2 (D. Conn. Nov. 6, 2009). Thus, when insurance coverage compensates a policyholder for less than the full loss, the insurer must first use any recovery from a third-party to compensate the policyholder for the remainder of its loss before keeping anything for itself.

Under Connecticut common law, the make whole doctrine is a default rule; the parties may abrogate it with express contract terms to that effect. <u>See</u> <u>Lara</u>, 2009 WL 3754069, at *2 ("The make whole principle is a 'rule of interpretation' that can be signed away; it is thus a 'gap-filler' that 'only exists when the parties are silent.'" (quoting <u>Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health</u> <u>& Benefit Welfare Plan</u>, 64 F.3d 1389, 1394 (9th Cir. 1995))). The district court concluded that the subrogation

clause in the E&O Contract abrogated the make whole doctrine. Reviewing this conclusion <u>de novo</u>, we disagree.

## II

The subrogation clause in the E&O Contract states:

> If any insured [TD Banknorth] has rights to recover all or part of any payment we [Fireman's Fund] have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

Under Connecticut law, boilerplate subrogation clauses incorporate default common law subrogation rules, and do not modify or abrogate them:

> In sum, while a right of true equitable subrogation may be provided for in a contract, the exercise of the right will have its basis in general principles of equity rather than in the contract, which will be treated as being merely a declaration of principles of law already existing....[A]lthough insurers may place subrogation clauses in their policies...those provisions typically are general and add nothing to the rights of subrogation arising by law....

<u>Wasko</u>, 849 A.2d at 781-82, 786 (brackets, ellipses, quotation marks, and citations in original omitted). The make whole doctrine, as part of the common law equitable right of subrogation, is likewise not abrogated by generic or boilerplate subrogation clauses. If parties desire to

9

contract around the make whole clause, they must state expressly that the doctrine is not to apply.  Silence is not enough.

The subrogation clause in the E&O contract is boilerplate and materially indistinguishable from the subrogation clause in Wasko, which the Connecticut Supreme Court concluded did not abrogate the make whole doctrine. The district court concluded that the subrogation clause in Wasko was distinguishable, locating a closer analog in American International Specialty Lines v. United States, No. 05-1020 C, 2008 WL 1990859 (Fed. Cl. Jan. 31, 2008), in which a general subrogation clause was read to abrogate the make whole doctrine:  "The fact that [insurer's] subrogation rights arise upon 'any' payment clearly contradicts the make-whole rule."  Id. at *11.  We follow Wasko instead, for several reasons.

First, Specialty Lines was not a decision by a Connecticut court and did not undertake to construe Connecticut law.  Second, Specialty Lines is an outlier. Several cases have examined contracts that contain boilerplate subrogation clauses, but lack any express language giving the insurer priority regardless of whether

10

the policyholder has been made whole. See, e.g., Sapiano v. Williamsburg Nat'l Ins. Co., 33 Cal. Rptr. 2d 659, 660, 28 Cal. App. 4th 533, 535-36 (1994); Progressive W. Ins. Co. v. Yolo Cnty. Sup. Ct., 37 Cal. Rptr. 3d 434, 443, 125 Cal. App. 4th 263, 274 (2005); In re DeLucia, 261 B.R. 561, 567 (Bankr. D. Conn. 2001) (holding that language in an insurance contract stating that the insurer "shall be subrogated to all rights of recovery of such person against any and all persons or organizations arising out of the condition, illness or injury with respect to which such payments were made" did not override the make whole doctrine (emphasis removed)); cf. Lara, 2009 WL 3754069, at *1 (holding that an agreement which specifically details the order of precedence of recovery overrides the make whole doctrine). In these cases, boilerplate subrogation language was found insufficient to displace the make whole doctrine and give the insurer priority recovery.

Taken together, these cases suggest that a boilerplate subrogation clause does not displace the make whole doctrine; displacement requires wording that speaks specifically to the priority of recovery. This is consistent with Wasko, as well as with a leading treatise.

11

See 16 Lee R. Russ, Couch on Insurance § 223:145 (3d ed. 2010) ("[A]n insurance contract providing generally that the insurer is subrogated to the rights of the insured does not itself permit an insurer to recover from a third-party tortfeasor until the insured has been made whole by the combination of insurance payments and the amount recovered from the tortfeasor; there must be specific language to the contrary to avoid the make whole rule."). We conclude that the subrogation clause in this case does not abrogate Connecticut's make whole doctrine.

Furthermore, even if the subrogation clause in this case did abrogate Connecticut's make whole doctrine, such abrogation would not apply to the $150,000 deductible. By its own express terms, the E&O contract's subrogation clause concerns only the sums that Fireman's Fund pays on behalf of its insureds. This allocation of rights does not apply to the $150,000 deductible, which was paid by TD Banknorth and not by Fireman's Fund.

**III.**

In the alternative, Fireman's Fund argues that Connecticut's make whole doctrine is inapplicable to

12

liability insurance. In support of this assertion, Fireman's Fund observes that all recent make whole doctrine cases in Connecticut (in state and federal courts) involve first-party losses.

We conclude that Connecticut's make whole doctrine applies equally to insurance for first-party loss and third-party liability. No case cited by Fireman's Fund or found by this Court remotely suggests that the doctrine is confined to first-party coverage. See Wasko, 849 A.2d 777; Lara, 2009 WL 3754069; In re DeLucia, 261 B.R. 561. True, the recent cases on Connecticut's make whole doctrine all involve first-party losses, not liability insurance, but that would seem to be a function of the doctrine being infrequently litigated. There are no more than a handful of recent cases; that none involves a liability contract is not a basis for inferring an implicit limitation.

The equitable principle underlying the make whole doctrine applies with equal force to liability insurance: If the recovery from a third party is insufficient to fully compensate both the policyholder and the insurer, the resulting loss should be borne by the insurer because the risk of this loss is precisely the risk that the

13

policyholder paid the insurer to assume. See Wasko, 849 A.3d at 784 n.8; Wine v. Globe Am. Cas. Co., 917 S.W.2d 558, 561-62 (Ky. 1996). The source of the loss has no evident bearing on this equitable principle. We therefore reject Fireman's Fund's contention that the make whole doctrine is inapplicable in the context of liability insurance.

**IV**.

Fireman's Fund's final argument is that it is entitled to the escrow funds because the make whole doctrine does not apply to deductibles. There are strong arguments on both sides of this issue.

TD Banknorth's claim to the funds finds its strongest support in the straightforward reading of the make whole doctrine. By both its name and definition, the make whole doctrine admits no exceptions. See Lara, 2009 WL 3754069, at *2 (explaining Connecticut's make whole doctrine without indicating any exceptions or carve-outs). Under the traditional canon that a rule means what it says, the doctrine applies to deductibles. If the make whole doctrine means what it literally says--if it intends to make the

14

policyholder truly *whole*--then it would apply to deductibles just as it does to non-deductible losses.

Nor does the basic purpose behind the doctrine--to insulate fully the insured against injury--suggest that exceptions are warranted.  Even when a policyholder is made whole for a loss in excess of all coverage, the policyholder still remains out-of-pocket to the extent of the deductible. Making the policyholder truly "whole," so that the policyholder suffers no net loss to the benefit of the insurance company, would therefore require compensating him for the deductible as well.

While a straightforward reading of the make whole doctrine appears to admit no exception, Fireman's Fund has strong countervailing support for its position that deductibles are unaffected by the doctrine.  The equitable principle that underlies the make whole doctrine is that a loss should be borne according to the allocation of risk in the insurance contract.  <u>Muller v. Soc'y Ins.</u>, 750 N.W.2d 1, 23 (Wis. 2008) (Abrahamson, C.J., dissenting) ("The made whole doctrine...rests upon the equitable principle that [w]here either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer

15

for that is a risk the insured has paid it to assume." (internal quotation marks omitted)). The insurance company must bear the unreimbursed amount of such loss as it was paid to assume. The risk of the deductible, however, is specifically allocated to the policyholder, not the insurer. It would therefore disserve the equitable principle behind the make whole doctrine--that a loss should be borne by the party to whom the risk of such loss was allocated under the contract--to apply the make whole doctrine to deductibles.

Applying the make whole doctrine to deductibles also creates an unhealthy incentive: The sooner an insurer reimburses its policyholder, the more it pays. The facts of this case are illustrative. If the make whole doctrine were applied to deductibles, then TD Banknorth would collect $150,000 from the escrow funds in this case, and Fireman's Fund would be left with a loss of almost $150,000. However, if Fireman's Fund had delayed paying TD Banknorth's claim until after TD Banknorth collected from Peerless and Hartford, TD Banknorth's claim would have been for less than the $150,000 deductible, and Fireman's Fund would not have had to pay anything. This difference in treatment based on timing makes no sense.

Including deductibles in the make whole doctrine also impairs the usefulness of deductibles in general. If an insurer is bound to refund the deductible when collection is made from third-parties through subrogation (even where this results in a loss to the insurer), the deductible does not operate reliably to allocate to the policyholder the risk that the policyholder contracted to bear. Instead, whenever the amount of the deductible is recovered from a third-party tortfeasor, the insurer still effectively bears the risk of the entire loss notwithstanding the deductible. This eliminates one ordinary means by which the insurer and the policyholder allocate risk between themselves, thereby reducing their flexibility in designing their contractual arrangement--and incrementally increasing moral hazard. By allocating the first portion of a loss to the policyholder, the deductible encourages the policyholder to take adequate precautions to avoid the loss in the first place; this incentive is diminished if the policyholder believes that the deductible may be reimbursed by the insurance company.

All this said, there is no statutory or precedential support for either position in Connecticut law--though either position, being a default rule, can be modified (and

17

its attendant problems dealt with) by contract. Whether the make whole doctrine applies to deductibles is a matter of Connecticut law, and Connecticut law is currently silent on the matter. Insurance is an important industry in Connecticut, and Connecticut's Supreme Court is one of the leading authorities in this area. We therefore think it prudent to certify this question to the Connecticut Supreme Court.

## CONCLUSION

For the reasons stated above, we hereby **CERTIFY** the following question to the Connecticut Supreme Court: **Are insurance policy deductibles subject to Connecticut's make whole doctrine?** We **STAY ADJUDICATION** of this dispute until we receive guidance from the Connecticut Supreme Court. The Connecticut Supreme Court may modify this question as it sees fit and add any pertinent questions of Connecticut law involved in this appeal that the Court chooses to answer. This panel retains jurisdiction over this case and will decide it once the Connecticut Supreme Court has either provided us with its guidance or declined certification.

It is therefore **ORDERED** that the Clerk of this Court transmit to the Clerk of the Connecticut Supreme Court a Certificate, as set forth below, together with this decision and a complete set of the briefs, appendices, and record filed in this Court by the parties.

**CERTIFICATE**

The foregoing is hereby certified to the Connecticut Supreme Court, pursuant to Conn. Gen. Stat. Ann. § 51-199b and 2d Cir. R. 0.27, as ordered by the United States Court of Appeals for the Second Circuit.