21-70-cv
*Ambac Assurance Corp. v. U.S. Bank Nat'l Assoc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of December, two thousand twenty-one.

PRESENT:
> GERARD E. LYNCH,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

Ambac Assurance Corporation,

> *Plaintiff-Appellant*,

> v.                                                      21-70-cv

U.S. Bank National Association,

> *Defendant-Appellee.*[1]

---

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | HARRY SANDICK (Peter W. Tomlinson, Henry J. Ricardo, Stephanie Teplin, Leigh E. Barnwell, *on the brief*), Patterson Belknap Webb & Tyler LLP, New York, NY. |
| FOR DEFENDANT-APPELLEE: | DANIELLE L. ROSE (Kelly J. Spatola, Melanie L. Oxhorn, *on the brief*), Kobre & Kim LLP, New York, NY. |

---

[1] The Clerk of the Court is respectfully instructed to amend the caption as set forth above.

Appeal from an order and judgment of the United States District Court for the Southern District of New York (Schofield, *J*.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order and judgment of the district court are **AFFIRMED**.

Plaintiff-Appellant Ambac Assurance Corporation ("Ambac") appeals from the district court's December 22, 2020 order and judgment, granting Defendant-Appellee U.S. Bank National Association's ("U.S. Bank") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2]   Specifically, Ambac argues that the district court erred by: (1) determining that Ambac had only a singular right to repayment under the Pooling Agreement dated August 1, 2005 (the "Agreement"); and (2) dismissing Ambac's declaratory judgment claim regarding the proper distribution method for future recoveries.   We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.

## I.   Ambac's Right to Repayment

This is a contract interpretation case concerning U.S. Bank's duties as Trustee of the Harborview Mortgage Loan Trust 2005–10 (the "Trust"), a residential mortgage-backed securities ("RMBS") trust backed by loans originated by Countrywide Home Loans, Inc. ("Countrywide").

---

[2] Ambac appeals from the December 22, 2020 final judgment entered in this case and "from all orders, opinions, decisions, and rulings underlying it."   ECF No. 1.   The December 22, 2020 final judgment was entered upon stipulation of both parties and referenced the district court's July 16, 2019 Opinion and Order, which granted U.S. Bank's motion to dismiss, as well as the district court's December 7, 2020 Opinion and Order, which resolved the parties' cross-motions for summary judgment.   Summary judgment was entered in favor of Ambac on two claims, neither of which U.S. Bank appeals.

After being formed through the Agreement, the Trust issued multiple classes of certificates to various holders. Ambac, a financial guaranty insurer, insured the two classes of certificates relevant to this appeal—namely, Class 1-A1B and Class 2-A1C1 (the "Insured Certificates")—pursuant to a Certificate Guarantee Insurance Policy and an Endorsement (together, the "Policy"), effective August 31, 2005. Both the Agreement and Policy are governed by New York law.

The certificates grant the holders the "rights to the cashflow generated by the payments made by borrowers of the mortgage loans." Joint App'x at 20–21. Each certificate class receives funds in a different distribution priority laid out in Section 5.01 of the Agreement (the "Waterfall Provision"). Distributions to the senior classes of certificates are prioritized over distributions to the subordinate classes. As set forth in Section 5.03, if the Trust suffers losses, those losses are allocated first to the subordinate classes and then to the senior classes.

Under the Policy, Ambac agrees, in exchange for premiums, to pay principal and interest to the Insured Certificates if the Trust suffers cashflow shortfalls. The Policy provides that Ambac makes claim payments only when the Agreement "transfer[s] to Ambac all rights under such Insured [Certificates] to receive the principal of and interest on the Insured [Certificates,]" and further provides that Ambac "shall be subrogated to the rights of each [certificate holder] to the extent of any payment by [Ambac] under the Policy." Joint App'x at 326, 330. The Agreement provides that Ambac "will be entitled to be subrogated to any rights of such [certificate holder] to receive the amounts for which such Insured Amount was paid, to the extent of such payment, and will be entitled to receive the Certificate Insurer Reimbursement Amount as set forth in [the Waterfall Provision]." Joint App'x at 634. The Certificate Insurer Reimbursement Amount ("CIR Amount") has a set priority in the Waterfall Provision, which provides that such

3

amounts are issued to Ambac after distributions are made to the senior certificate classes, but before any are made to the subordinate certificate classes.

Neither party disputes that the Agreement provides Ambac with a right to repayment for the amounts Ambac paid under the Policy. However, the parties dispute what, exactly, that right of repayment entails. U.S. Bank argues that Ambac is entitled to receive payments only through the CIR Amount, which it must receive in its delineated waterfall position. In contrast, Ambac asserts that it has two separate rights to repayment—first, a subrogee's right to receive the distributions that the insured certificate holders would receive at the holders' position in the waterfall, and second, the right to receive the CIR Amount at Ambac's position in the waterfall as insurer. The district court granted summary judgment in U.S. Bank's favor, holding that the Agreement provided Ambac with only a single right to repayment through the CIR Amount. This appeal followed.

We review *de novo* the grant of a motion for summary judgment, "drawing all reasonable factual inferences in favor of the party against which summary judgment is sought." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under New York law, which governs the Agreement, the threshold question on a motion for summary judgment "with respect to a contract claim is whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Tr. Co.*, 595 F.3d at 465 (internal quotation marks omitted). A contract is unambiguous "where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and

4

concerning which there is no reasonable basis for a difference of opinion." *Id.* at 467 (internal alterations and quotation marks omitted). "[A]mbiguity does not exist simply because the parties urge different interpretations." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,* 252 F.3d 608, 616 (2d Cir. 2001) (internal quotation marks omitted). Instead, when the meaning of a particular provision is disputed, "the task of the court is to determine whether such clauses are ambiguous when read in the context of the entire agreement." *Law Debenture Tr. Co.*, 595 F.3d at 467 (internal quotation marks omitted). "We review *de novo* a district court's interpretation of the terms of a contract," *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency Inc.*, 644 F.3d 166, 169 (2d Cir. 2011), including its determination of whether a contract is ambiguous, *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000).

"It is axiomatic under New York law . . . that the fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (internal alterations and quotation marks omitted). If the contract "as a whole makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement." *Id.* (internal alterations and quotation marks omitted); *see Westmoreland Coal Co. v. Entech, Inc.*, 794 N.E.2d 667, 670 (N.Y. 2003) (stating contracts should be read "as a harmonious and integrated whole" and each part should be "interpreted with reference to the whole . . . to give effect to its general purpose"). Accordingly, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (internal quotation marks omitted); *see Law*

5

*Debenture Tr. Co.*, 595 F.3d at 468 ("If the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." (internal alterations and quotation marks omitted)).

Here, after conducting *de novo* review, as well as reviewing the terms of the contract itself, we hold that the express terms of the Agreement unambiguously dictate that Ambac has only a singular right to repayment though the CIR Amount, to be received in its designated waterfall priority—*i.e.*, after the senior certificate holders but before the junior certificate holders—and accordingly, conclude that the district court properly granted summary judgment to U.S. Bank.

Our conclusion is supported not only by the plain terms of the individual provisions outlining Ambac's right to receive repayment, but also by a reading of the Agreement as an integrated whole. Section 4.05 of the Agreement, titled "Certificate Insurance Policy," details how Ambac (the "Certificate Insurer") pays insurance proceeds to certificate holders, *see* § 4.05(a)-(c), and, critically, in Subsection (d), grants Ambac subrogation rights and the right to receive repayment, *see* § 4.05(d).[3] As the district court correctly determined, this Subsection provides the mechanism by which that repayment will be made—*i.e.*, via the CIR Amount

---

[3] The relevant portion of § 4.05(d) provides:

> The Trustee hereby agrees on behalf of the Holders of the Insured Certificates. . . for the benefit of the Certificate Insurer that, to the extent the Certificate Insurer pays any Insured Amount, . . . the Certificate Insurer will be entitled to be subrogated to any rights of such Holder to receive the amounts for which such Insured Amount was paid, to the extent of such payment, and will be entitled to receive the Certificate Insurer Reimbursement Amount as set forth in [the Waterfall Provision].

Joint App'x at 634.

according to the terms of the Waterfall Provision, which, in turn, provides that Ambac receives its reimbursement amount only after the senior certificates receive their distribution. *See* Joint App'x at 637–38.

Ambac, however, asserts that the conjunctive "and" in Section 4.05(d) unambiguously provides Ambac with two, distinct repayment rights, "making clear that Ambac 'will be entitled' to receive amounts as subrogee *and . . .* [as] contractual reimbursement for claims not previously recovered through subrogation." Appellant's Br. at 24–25. We are unpersuaded. As the district court noted, in the context of the Agreement as a whole, the "and" in Section 4.05(d) does not necessarily create a separate right but may be merely explanatory. Section 4.05(d) provides for separate rights in separate sentences; the secondary clause in the subrogation sentence thus may only limit and explain the third clause rather than add a new, distinct right. At a minimum, the Agreement does not confer a right of subrogation that would allow Ambac to occupy a different position in the distribution waterfall. *See Kaf-Kaf, Inc. v. Rodless Decorations, Inc.*, 687 N.E.2d 1330, 1332–33 (N.Y. 1997) (observing that "[s]ubrogation" allows an insurer to "seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse").

Other provisions of the Agreement confirm this reading. First, the CIR Amount is defined as, "[f]or any Distribution Date, . . . *all amounts* previously paid by the Certificate Insurer. . . for which the Certificate Insurer has not been reimbursed *prior* to such Distribution Date." Joint App'x at 562 (emphasis added). The phrase "all amounts" confirms that, on each Distribution Date, Ambac is to be paid *exclusively* through the CIR Amount and not, as Ambac suggests, through both the CIR Amount and other distributions as a subrogee. Further, as the district court

7

correctly noted, the word "prior" in this definition "explicitly contemplates that amounts reimbursed through the waterfall would not occur on the same distribution date . . . . [and] Ambac necessarily cannot receive some distributions on the *same* Distribution Date in a more senior waterfall position." Special App'x at 29. Ambac's reading would render this phrase "superfluous or meaningless," an interpretation that we "avoid[] if possible." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks omitted); *see Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 748 (N.Y. 2017) ("[A] contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." (internal quotation marks omitted)).

Moreover, Section 12.03 unambiguously confirms that Ambac only has a single right of repayment. The provision states: "By accepting its Insured Certificate, each Holder of an Insured Certificate agrees that . . . the Certificate Insurer shall have the right to exercise all rights of the Holders of the Insured Certificates under the Agreement (*other than the right to receive distributions on the Insured Certificates*)." Joint App'x at 678 (emphasis added). In other words, rather than granting Ambac a separate right to receive distributions in the Insured Certificates priority position, the Agreement expressly rejects it. Whatever additional right "to exercise all rights of the Holders of the Insured Certificates" Ambac may have as a subrogee, it does not include the right to receive distributions.

Further, the Waterfall Provision refers to the Certificate Insurer only once, when delineating its distribution position after the senior certificate holders. That provision provides that payments made to the senior classes are made to "Holder[s]" or "Certificates." Joint App'x

8

at 637–38. Neither of these classifications includes Ambac, which only obtains the "amounts" owed to Certificates and does not hold the certificates itself. *See* Joint App'x at 634. Ambac's contrary interpretation—that it should receive the distributions in place of the Insured Certificates as well as in its Insurer position—requires us to read terms into the Agreement that are not there. *See Vt. Teddy Bear Co.*, 807 N.E.2d at 879 ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." (internal quotation marks omitted)). Likewise, it is noteworthy that the word "subrogation" only appears once in the entire Agreement, in Section 4.05(d). Nowhere in the Agreement's exhaustive definitions and provisions did the parties include any definition of a subrogation amount, subrogation rights, or a subrogation payment priority. As we have explained, "when the negotiated contract is between sophisticated parties . . . , courts should be extremely reluctant to interpret an agreement as impliedly stating something."[4] *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 18 (2d Cir. 2018) (internal quotations omitted); *accord Vt. Teddy Bear Co.*, 807 N.E.2d at 879. In light of the Agreement's contractual language, we decline Ambac's invitation to imply terms that the parties did not expressly negotiate themselves.

---

[4] We also agree with the district court that this interpretation is reinforced by the Policy and the Prospectus Statement, both of which the district court properly considered in its analysis. *See TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005) ("Under New York law, all writings which form part of a single transaction and are designed to effectuate the same purpose must be read together." (internal alterations and quotation marks omitted)); *accord Teletech Eur. B.V. v. Essar Servs. Mauritius*, 921 N.Y.S.2d 62, 63 (1st Dep't 2011) (stating that "for purposes of interpreting contemporaneous agreements which are part of the same transaction, the instruments should be read together"). We agree that the Policy's reference to subrogation is "a limitation and explanation of Ambac's right to repayment in the preceding sentence," Special App'x at 25; *see* Joint App'x at 326, while the Prospectus Supplement confirms that Ambac recovers the amounts owed it only after the senior certificate class has been paid, *see* Special App'x at 30; Joint App'x at 352.

Ambac also argues that the district court erred in granting summary judgment because its interpretation "fail[ed] to give effect to the equitable subrogation principles that underlie all contracts of insurance." Appellant's Br. at 33. We disagree. "Subrogation is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss." *Winkelmann v. Excelsior Ins. Co.*, 650 N.E.2d 841, 843 (N.Y. 1995). Functionally, Ambac's appeal to equitable subrogation, as well as its various policy arguments, are nothing more than a request for us to rewrite the clear terms of the Agreement, which is not permitted under New York law. *See Vt. Teddy Bear Co.*, 807 N.E.2d at 879. Here, as discussed above, the unambiguous terms of the Agreement outline Ambac's singular right to repayment through the CIR Amount, and those terms must govern.

Accordingly, we conclude that the district court properly determined that the Agreement only granted Ambac a singular right to repayment and properly granted summary judgment in U.S. Bank's favor.

## II. Declaratory Judgment

Additionally, Ambac argues that the district court erred by dismissing Ambac's request for a declaratory judgment interpreting the Agreement as it pertains to future distributions. We review a district court's refusal to grant a declaratory judgment for abuse of discretion, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995); *Grand River Enters. Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 127 (2d Cir. 2021), and conclude that the district court did not abuse its discretion here.

In exercising its discretion over whether to adjudicate a declaratory judgment claim, a district court must determine "(1) whether the judgment will serve a useful purpose in clarifying

or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012) (internal quotation marks omitted).

Here, no useful purpose would be served by granting Ambac declaratory relief as Ambac's declaratory judgment claim is duplicative of its breach of contract claim. Although Ambac concedes this point as to past distributions, it still asserts that declaratory relief is necessary as to *future* distributions. We are unpersuaded. The issues on which Ambac seeks declaratory relief—namely, how U.S. Bank must calculate and write up the Class Certificate Principal Balance —necessarily had to be decided in the resolution of the breach of contract claims the district court allowed to go forward and that were predominately decided in Ambac's favor in its cross-motion for summary judgment. Ambac's argument that a declaratory judgment is still needed is thus primarily predicated on its assumption that, without a declaratory judgment, U.S. Bank will continue to "misappl[y] recoveries" and force Ambac to "return to court each and every month." Appellant's Br. at 50. To the extent that Ambac suggests that U.S. Bank will disregard the district court's binding judgment as to how to apply future recoveries (a judgment that U.S. Bank has, incidentally, not appealed), its concern is merely speculative. Accordingly, we conclude that the district court did not abuse its discretion in dismissing Ambac's request for a declaratory judgment.[5]

---

[5] Ambac also argues that the district court made two clear factual errors: (1) determining that future distributions depended on the results of a state trust instruction proceeding ("TIP"), when U.S. Bank had, in fact, not committed to seeking instruction on those distributions unless a pending settlement was approved; and (2) assuming that all future distributions would stem from the TIP settlement, when other potential sources of distributions were available. Those arguments do not change our analysis. First, district courts typically act within the bounds of their discretion when they "dismiss declaratory judgment actions where another suit is pending in a state court presenting the same issues, not governed by federal

11

       \*                \*                \*

We have considered all of Ambac's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the order and judgment of the district court.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe, Clerk of Court

---

law, between the same parties," as the district court did here.  *Niagara Mohawk Power Corp.*, 673 F.3d at 104 (internal quotation marks omitted).  Second, Ambac's argument still relies upon multiple hypotheticals—namely, that a settlement would not be approved and that U.S. Bank would not seek instruction if it were not.  Third, even assuming that the district court overestimated the scope of the pending TIP settlement, it remains the case that, fundamentally, Ambac is attempting to restyle the same contractual interpretation issue already being decided in this case as a distinct declaratory judgment claim. We find it unnecessary to adjudicate the same claim twice.

12