******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

OLIVER HOLMES ET AL. *v.* SAFECO INSURANCE
COMPANY OF AMERICA
(AC 37936)

Beach, Sheldon and Gruendel, Js.*

*Argued September 15, 2016—officially released March 21, 2017*

(Appeal from Superior Court, judicial district of New
Haven, Wilson, J.)

*H. Scott Williams*, with whom was *Edwin L. Doernb-
erger*, for the appellant (plaintiffs).

*Philip T. Newbury, Jr.*, for the appellee (defendant).

*Opinion*

SHELDON, J. The plaintiffs, Oliver Holmes and Hannah Sokol-Holmes, appeal from the summary judgment rendered in favor of the defendant, Safeco Insurance Company of America, on the plaintiffs' claim for breach of contract and breach of the implied covenant of good faith and fair dealing in connection with the defendant's failure and refusal to pay their claim for coverage under their homeowners' insurance policy with the defendant for losses due to ice damming on their property in February of 2011. The court granted the defendant's motion for summary judgment on the ground that the plaintiffs failed to commence an action within one year of the reported date of loss, as required by the time limitation provision of the subject homeowners' insurance policy. On appeal, the plaintiffs argue, as they did before the trial court, that the one year time limitation provision of their policy was superseded as a matter of law by the eighteen month limitation provision of Connecticut's standard fire insurance policy, as set forth in General Statutes (Rev. to 2011) § 38a-307,[1] because the scope of coverage under their homeowners' policy extended to losses caused by fire, which are governed by that statute. For the following reasons, we agree with the trial court that that claim must be rejected in this case, which does not arise from or concern a fire loss, and thus that the court's judgment for the defendant must be affirmed.[2]

The trial court set forth the following relevant facts. "The plaintiffs are owners of [residential] property located in New Haven. . . . The defendant is a New Hampshire corporation with a principal place of business located in Boston, Massachusetts. The plaintiffs purchased a homeowners' insurance policy from the defendant that was effective from July 12, 2010 through July 12, 2011, which insured their New Haven property. The policy insured the residence and personal property located at the residence, and provided replacement cost coverage for damage to the dwelling up to a limit of $685,000, and for damages to personal property up to $479,850. Throughout December, 2010, and through February, 2011, significant snow and ice storms occurred throughout New Haven. During those storms, heavy amounts of snow and ice caused damage to the roofing and exterior walls of the property, resulting in damage to the property and the contents within.

"The plaintiffs notified the defendant of the damage to the property on or about June 17, 2011, with a date of loss of February 15, 2011. The defendant inspected the property on June 26, 2011, and issued $9633.10 to the plaintiffs following its determination of the loss that was covered under the policy. On or about July 21, 2011, the plaintiffs obtained an estimate from a contractor for the cost to repair the damage to the home, which the contractor determined to be $271,302.79. The plaintiffs

provided additional information, including the estimate, to the defendant. On August 4, 2011, the defendant responded to the estimate, and informed the plaintiffs that it would send a field specialist and an engineer to inspect and reevaluate the damage to the property. On August 11, 2011, the field specialist and engineer prepared separate investigations, and the engineer determined that the damage to the home was the result of long-term wear and tear, and was not the result of the weight of the snow and ice. On October 4, 2011, the defendant denied the plaintiffs' claim, indicating that the loss was not covered.

"[The plaintiffs commenced this action on August 15, 2012, by service of process on the defendant . . . . On May 15, 2013, the plaintiffs filed a two count amended complaint, which sounds in breach of contract and breach of duty of good faith and fair dealing.] In the complaint, the plaintiffs allege the following. The additional property damage that occurred as a result of the storms was covered under the terms and conditions of the policy, and the defendant owed the plaintiffs a duty to provide coverage for accidental direct physical loss caused by the snow and ice. The defendant refused, neglected and/or failed to pay the full replacement costs of the plaintiffs' lost and damaged property, in breach of its obligations pursuant to the terms of the policy. Furthermore, [the plaintiffs allege that] by denying the claim, the defendant has breached its duty of good faith and fair dealing owed to the plaintiffs under the policy."

On December 18, 2013, the defendant filed a motion for summary judgment in which it asserted, inter alia, that the plaintiffs' action is time-barred because it was not brought within one year of the date of loss as required by their policy. The plaintiffs opposed the defendant's motion for summary judgment on the ground that their action was not barred by the one-year time limitation set forth in their insurance policy because said policy affords coverage against the peril of fire, and is thus a fire insurance policy that is governed by § 38a-307, which affords an insured eighteen months to commence suit. The court heard oral argument on the defendant's motion on December 22, 2014.

By way of memorandum of decision dated April 16, 2015, the court granted the defendant's motion for summary judgment on the ground that the plaintiffs' action was subject to the one year time limitation set forth in their homeowners' insurance policy and they had failed to comply with that requirement. In so doing, the trial court explained, inter alia: "The defendant . . . argues that the plaintiffs' action is time-barred because the policy requires that suit be commenced within one year of the date of loss, the loss here occurred on February 15, 2011, and the plaintiffs did not commence the action until August 15, 2012. The defendant cites the 'Suit Against Us' provision in the plaintiffs' policy which

reads: 'No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage.'

"The plaintiffs counter that their action was timely filed because it was brought within the eighteen month suit limitations period mandated by . . . § 38a-307, the Standard Form Fire Policy Statute, as it existed at the time the plaintiffs' policy was in effect. Specifically, the plaintiffs argue that the defendant must conform to all provisions, stipulations, and conditions set forth in General Statutes [Rev. to 2011] §§ 38a-307 and 38a-308.

"The defendant argues in reply that the eighteen month suit limitations period mandated in § 38a-307 applies to standard form fire insurance policies and the plaintiffs' policy is not a fire policy, but rather an 'all-risk policy' that includes coverage for loss resulting from various perils including fire. The defendant points out that § 38a-308 (b) was amended [by No. 12-162, § 3, of the 2012 Public Acts effective] July 1, 2012, to extend the eighteen month suit limitations period mandated in § 38a-307 to other losses besides fire which is further evidence that prior to July 1, 2012, § 38a-307 only applied to fire insurance policies and not all-risk policies such as the plaintiffs'."

With that as background, the court distilled the issue before it to "whether the eighteen month suit limitations period mandated in § 38a-307 applie[d] to the plaintiffs' [insurance] policy in the present case." The court concluded that it did not. In so concluding, the court began by reciting the statutory language at issue in this case, and recognizing the interplay between §§ 38a-307 and 38a-308. The court reasoned, inter alia, that: "At the time the plaintiffs' policy was in effect, General Statutes (Rev. to 2011) § 38a-308 provided in relevant part that: 'No policy or *contract of fire insurance* shall be made, issued or delivered by any insurer or any agent or representative thereof, on any property in this state, unless it conforms as to all provisions, stipulations, agreements and conditions with the form of policy set forth in section 38a-307. . . . Such policy shall be clearly designated on the back of the form as '*The Standard Fire Insurance Policy of the State of Connecticut*' . . . . [Section 38a-307] is the standard form for fire insurance policies and the standard form mandates that fire insurance policies conform to that section. 'The Connecticut legislature has enacted a standard form of fire insurance, with which all fire insurance policies issued in this state must conform. See General Statutes § 38a-308.' *Wasko* v. *Manella*, 269 Conn. 527, 535, 849 A.2d 777 (2004). Section 38a-307 contains the suit limitations provision, which provides that '[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied

with, and unless commenced within eighteen months next after the inception of the loss.' In reviewing the plaintiffs' policy and comparing it to the standard form fire insurance provision in § 38a-307, it is clear that the policy does not resemble the standard form set forth in § 38a-307. There is no dispute that the plaintiffs' policy in the present case is an 'all-risk' homeowners' policy.

"Section 38a-307 provides in relevant part that 'the standard form of fire insurance policy of the state of Connecticut . . . shall be as follows: In Consideration of the Provisions and Stipulations Herein or Added Hereto . . . this company . . . does insure [name of insured] and legal representatives . . . against all DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY . . . .'

"A review of the language contained in the standard form fire insurance provisions in § 38a-307 and the plaintiffs' 'all-risk' policy clearly indicates that the plaintiffs' policy is a comprehensive all-risk homeowner's policy that insures against losses and damages from various perils, including the peril of fire. The standard form fire insurance provisions contained in § 38a-307 insures 'against all DIRECT LOSS BY FIRE . . . .'

"In addition, '[g]enerally, "all-risk" policies cover all causes of loss unless they are expressly excluded.' [M. Taylor et al., Connecticut Insurance Law (2d Ed. 2013) § 5-1, p. 142.] '[A]ll-risk policies . . . often contain express written exclusions and implied exceptions that have been developed by the courts over the years.' . . . Thus, 'a policy of insurance insuring against "all-risks" is to be considered as creating a special type of insurance extending to risks not usually contemplated, and recovery will usually be allowed, at least for all losses of a fortuitous nature, in the absence of fraud or other intentional misconduct of the insured, unless the policy contains a specific provision expressly excluding the loss from coverage. . . . Named-peril policies on the other hand, only insure against physical damage or loss caused by specific perils listed in the policy. A prime example of a named-peril policy is the standard fire policy . . . .' [M. Taylor et al., supra, § 5-1, p. 142]." (Citation omitted; emphasis in original.)

The court also noted that: "General Statutes (Rev. to 2011) § 38a-308 (b) [provides]: 'Any policy or contract which includes, either on an unspecified basis as to coverage or for an indivisible premium, coverage against the peril of fire and substantial coverage against other peril need not comply with the provisions of subsection (a) hereof, provided (1) such policy or contract shall afford coverage, with respect to the peril of fire, not less than the substantial equivalent of the coverage afforded by said standard fire insurance policy, (2) the provisions in relation to mortgagee interests and obliga-

tions in said standard fire insurance policy shall be incorporated therein without change, (3) such policy or contract is complete as to all of its terms without reference to any other document and (4) the commissioner is satisfied that such policy or contract complies with the provisions hereof.' "

In applying § 38a-308 to this case, the court explained: "[U]pon review of the plaintiff's policy . . . it is clear that it is not a fire policy, but instead, it is a comprehensive 'all-risk' homeowner's policy that insures against physical losses and damages to the insured's home and personal property from various perils, including the peril of fire. In addition . . . the policy is complete as to all of its terms without reference to any other document and incorporates the substance of the provisions of the standard form policy with respect to mortgagee interests and obligations."

The court concluded that the plaintiffs' homeowners' insurance policy was not a standard fire insurance policy that was governed by § 38a-307, and thus that it "need not comply with the provisions thereof, including the requirement of an eighteen month suit limitation period . . . ." Accordingly, the court applied the one-year time limitation contained in the plaintiffs' insurance policy, and concluded that the plaintiffs did not satisfy that requirement and rendered summary judgment in favor of the defendant. This appeal followed.

On appeal, the plaintiffs challenge the summary judgment rendered by the trial court. The plaintiffs do not dispute that their policy required that suit be commenced within one year of the date of loss.[3] They argue, however, as they did before the trial court, that because their policy insured against the peril of fire, it is a fire insurance policy. On that basis, the plaintiffs claim that § 38a-307, the statute that prescribes the guidelines and requirements for standard fire insurance policies, prohibited the defendant from enforcing a suit limitations period shorter than the eighteen months prescribed by that statute. We are not persuaded.

Our standard of review in an appeal from the granting of a motion for summary judgment is plenary. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 781, 105 A.3d 103 (2014).

The plaintiffs' claim that their loss is not subject to the one-year time limitation set forth in their homeowners' insurance policy, but, rather is governed by the eighteen month time limitation set forth in § 38a-307, presents an issue of statutory interpretation over which our review is also plenary. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Adams*, 308 Conn. 263, 269–70, 63 A.3d 934 (2013).

"As with all issues of statutory interpretation, we look first to the language of the statute. . . . In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended. . . . Furthermore, [i]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Doe* v. *West Hartford*, 168 Conn. App. 354, 147 A.3d 1083, cert. granted on other grounds, 323 Conn. 936,    A.3d    (2016).

Our plenary review of the record leads us to the conclusion that the judgment of the trial court must be affirmed. In its thorough and well reasoned opinion, the court properly analyzed the application of our statutes governing standard fire insurance policies to the plaintiffs' homeowners' insurance policy. The loss sustained by the plaintiffs in this case was not caused by fire. The insurance policy under which they claim coverage is not a standard fire insurance policy; nor, by its form, does it purport to be a standard fire insurance policy. It is a homeowners' insurance policy that provides coverage for loss sustained by fire and several other perils. The inclusion of coverage against the peril of fire in

the policy did not transform that policy, contrary to the plaintiffs' argument, into a standard fire insurance policy. By the plaintiffs' reasoning, if an insurance policy covers loss for fire, all provisions of that policy are subject to the time limitation set forth in § 38a-307 regardless of the cause of the loss. The plaintiffs' argument is belied by the plain language of § 38a-307, which clearly and unambiguously applied only to standard fire insurance policies. There was no language in that statute that could be construed to pertain to any and all policies that provide coverage against the peril of fire. That statute, as it existed at the time of the plaintiffs' loss, was devoid of any mention of all-risk policies. The trial court aptly recognized the distinction between a standard policy and a general homeowners' or all-risk policy that provides coverage for loss caused by fire. That distinction was recognized in § 38a-308, which differentiated between a standard fire insurance policy and an all-risk policy that insures against the peril of fire, in addition to other perils.

On the basis of the foregoing, we agree with the trial court's well reasoned decision granting summary judgment in favor of the defendant on the ground that the plaintiffs' action was subject to the provision of their homeowners' insurance policy that required them to file suit within one year from the date of loss but that they failed to do so.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The plaintiffs' claim is based upon the versions of General Statutes §§ 38a-307 and 38a-308 that were in effect as of the date of their loss in February of 2011. Hereinafter, all references to §§ 38a-307 and 38a-308 are to the 2011 revision of those statutes.

[2] The trial court also rejected the plaintiffs' claims of estoppel and waiver. They have not challenged those rulings on appeal.

[3] The "Suit Against Us" provision of the policy provided: "No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage."